# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| WILLIAM F. NEFSKY, **Plaintiff,** v. UNUM LIFE INSURANCE COMPANY OF AMERICA, **Defendant.** | 1:15-cv-2119-WSD |

## OPINION AND ORDER

This matter is before the Court on Plaintiff William F. Nefsky's ("Plaintiff") Motion for Reconsideration and Motion to Alter/Amend Judgment [29] ("Motion for Reconsideration").

## I. BACKGROUND

### A. The Disability Insurance Policy

On June 9, 1979, Defendant Unum Life Insurance Company of America ("Defendant") issued a disability insurance policy ("Policy") to Plaintiff. ([19.4] at 2). The Policy includes a Lifetime Sickness Benefit Rider (the "Rider"), which states that, beginning on June 9, 2013, Defendant is required to make payments to

Plaintiff if he is "totally disabled."[1]  (Def. Statement of Undisputed Material Facts

[19.1] ("DSMF") ¶¶ 9-13).  The Rider includes a definition of total disability:

> When used in this rider only:  "Total disability" and "totally disabled" mean
>
> 1. sickness restricts the Insured's ability to perform the material and substantial duties of his regular occupation to an extent that prevents him from engaging in his regular occupation; and
>
> 2. the Insured is receiving medical care from someone other than himself which is appropriate for that sickness.

(DSMF ¶ 11).  The Policy does not provide coverage, after June 9, 2013, for any

"residual disability" suffered by Plaintiff.  The Policy defines residual disability as

follows:

> "Residual disability" and "residually disabled" mean injury or sickness does not prevent the Insured from engaging in his regular occupation, BUT does restrict his ability to perform the material and substantial duties of his regular occupation:  (i) for as long a time as he customarily performed them before the injury or sickness; or (ii) as effectively as he customarily performed them before the injury or sickness.

(DSMF ¶ 5).

---

[1] The total disability must have begun before, and been continuous since, June 9, 2008.  (DSMF ¶¶ 9-13).

B.  Plaintiff's Occupation

In 1974, Plaintiff began working for Precious Metals Exchange, a company that sold gold and silver coins and bars to investors. (DSMF ¶ 14). In 1978, Plaintiff bought Precious Metals Exchange and incorporated it as WFN Enterprises, Inc. ("WFN"). (DSMF ¶ 15). Plaintiff is the president and sole shareholder of WFN. (DSMF ¶ 16). He exercises "complete control" over WFN and has done so continuously since 1978. (DSMF ¶ 17).

In the late 1970s, Plaintiff, through WFN, started buying and selling watches and jewelry. (DSMF ¶ 19). He continues to do so today. Plaintiff also buys and sells china, crystal and silverware. (DSMF ¶¶ 19, 23). Plaintiff often purchases items, especially watches, wholesale from manufacturers. (DSMF ¶ 25). He also purchases items from estates, stores with excess inventory, and stores going out of business. (DSMF ¶ 26; [20] at 63). Watches constitute the largest portion of Plaintiff's inventory. (DSMF ¶ 24; see [20] at 48 ("[P]rimarily, I've worked with watches.")). Plaintiff has taken courses on grading diamonds and color stones, but he is not a certified gemologist. (DSMF ¶¶ 20-21). He describes himself as a "Business Broker." (DSMF ¶ 22; see also [23] at 2).

Plaintiff's inventory is stored in an office space, which he has rented for the last twenty years. (DSMF ¶ 30). The office has a workroom, with good lighting,

3

where Plaintiff processes "small inventory deals." (DSMF ¶ 31). Plaintiff sells most of his inventory on eBay. (DSMF ¶ 33). He also sells items at trade shows, through his company website, and occasionally over the telephone if he is contacted by a former customer. (DSMF ¶¶ 26, 34-36). His products are not sold in a showroom or store. (DSMF ¶ 32). Plaintiff, using a template, drafts descriptions of the items he sells online. (DSMF ¶ 37). It usually takes him about fifteen minutes to draft a description. (DSMF ¶ 38). He composes only one description for an item he buys in bulk. (DSMF ¶ 39). These descriptions are posted on eBay and WFN's website.

In the late 1990s, Plaintiff hired Mike Hoffland ("Hoffland") to maintain Plaintiff's eBay account, to photograph and lists the items to be sold, and to fill any orders received over the internet. (DSMF ¶¶ 40-43).[2] Hoffland retrieves, inspects, packages and ships WFN items sold online. (DSMF ¶ 44). If Hoffland discovers a defect in the item, he raises the issue with Plaintiff. (DSMF ¶ 45). Daniel Marino has handled WFN's bookkeeping since 1978. (DSMF ¶ 46). He pays WFN's bills and maintains records of the company's purchases and sales. (DSMF ¶ 47).

---

[2] Hoffland owns On the Road Publishing, a company that appears to offer similar services to other businesses. (DSMF ¶ 40; [22] at 55).

C.  Plaintiff's Disability

On November 8, 2006, Plaintiff suffered a retinal vein occlusion. (DSMF ¶ 48). He was fifty-nine (59) years old at the time. (DSMF ¶ 49). The incident severely impaired Plaintiff's vision in his left eye. (DSMF ¶ 48). Plaintiff can see colors and shapes with his left eye. (DSMF ¶ 40; [22] at 55). His vision in his right eye is 20/25 or 20/30, which he considers "pretty good." ([20] at 40, 50). The damage to Plaintiff's left eye causes his right eye to "tire out much faster." ([20] at 50). This prevents him from "analyz[ing] items for more than short periods of time" because his vision "blur[s] out in a short period." (DSMF ¶¶ 50, 71; [20] at 50). It has not resulted in other physical limitations. (DSMF ¶ 51). Plaintiff is able to drive, hike, bike, swim, jog, and travel for pleasure. (DSMF ¶ 52).

Plaintiff previously was able to visually evaluate "three-dimensional" products for up to eight hours a day. (DSMF ¶ 72; [20] at 49, 67). With his diminished eye sight, he can only do this kind of evaluation for a maximum of two hours a day. (DSMF ¶ 72; [20] at 47, 50). As a result, he sometimes declines business opportunities that would require him to inspect items for long periods of

5

time. ([20] at 48).³ In 2007, Plaintiff lost one watch manufacturer's business because he told them he could not evaluate 1,600 of their watches. (DSMF ¶ 73). Plaintiff continues to attend trade shows where he still engages in the buying and selling of items. (DSMF ¶¶ 88, 90).⁴ In 2015, he attended a trade show in Las Vegas and six or seven trade shows in Atlanta. (DSMF ¶ 89). Plaintiff is unable to do "complicated," "task oriented" reading for other than short periods of time. ([20] at 47).

Plaintiff continues to purchase watches at wholesale prices. (DSMF ¶ 74). Manufacturers often call him and ask him if he is interested in buying excess inventory. (DSMF ¶ 78). Plaintiff takes fifteen minutes, or less, to decide whether to make the purchase. (DSMF ¶ 79). Plaintiff considers his finances, whether he has "staff to do the fulfillment," and the price at which the items are selling in secondary markets. (DSMF ¶ 80). He typically buys a limited number of watch

---

³ Plaintiff pursues these opportunities when he is able to obtain short-term help from others in the industry. (See, e.g., [20] at 48, 66-67; DSMF ¶ 83). Plaintiff testified "they have continued to supply me even though I've had an issue [with my vision] because I have been able to delegate some of the work to others. I have been able to delegate a lot of the work to others and keep up with the quality." (DSMF ¶ 83). Plaintiff also testified that he "sometimes . . . farm[s] something out and get[s] a commission on the back end." ([20] at 58).

⁴ Plaintiff is not able to "exhibit" his products at trade shows. (DSMF ¶¶ 86-87). He did, however, exhibit items at a trade show in 2007, shortly after his retinal vein occlusion. (DSMF ¶ 87).

models in large quantities. (DSMF ¶ 77). Plaintiff also "occasionally help[s] some[one] broker a collection" of watches. (DSMF ¶ 85).

Plaintiff remains a representative for at least two watch manufacturers. (DSMF ¶ 75). He is the exclusive representative for Reactor watches, and also sells watches manufactured by Wenger. (DSMF ¶ 76). He continues to advertise in two trade magazines. (DSMF ¶ 91). He continues to evaluate and purchase items from estates and jewelry businesses. (DSMF ¶¶ 93, 96). In 2015, he traveled to jewelry stores in North Carolina and Florida, where he evaluated and purchased items from both stores. (DSMF ¶ 95). He sometimes has products "shipped directly from [a jewelry store] and he doesn't even have to physically handle it." (DSMF ¶¶ 92, 94). In 2015, Plaintiff sold approximately 1,500 watches on eBay and listed other items that did not result in a sale. ([22] at 42-43). Plaintiff has a computer at home, uses an iPhone and an iPad, and has three computers on his desk at work. (DSMF ¶¶ 53-54).[5] Plaintiff's business is operational today and has continued, uninterrupted, since the reduction of vision in his left eye. (DSMF ¶¶ 68-69).

---

[5] Plaintiff is able to watch television for up to two hours at a time. ([20] at 43).

D.  Plaintiffs' Claim for Disability Benefits

On August 1, 2013, Plaintiff contacted Defendant and requested disability benefits under the Rider. (DSMF ¶ 65).[6] Plaintiff stated he was "totally disabled" due to the retinal vein occlusion in his left eye. (DSMF ¶ 65). On October 3, 2013, Defendant denied Plaintiff's claim for disability benefits. (DSMF ¶ 66). Defendant concluded that Plaintiff was residually disabled, not totally disabled, and that he was thus ineligible for payments under the Rider. (DSMF ¶ 66).

E.  Procedural History

On May 14, 2015, Plaintiff filed his Complaint [1.1] in the State Court of DeKalb County, Georgia. Plaintiff asserted a claim for breach of contract, arguing that Defendant refused to pay him disability benefits to which he is entitled under the Rider. Plaintiff also asserted a claim, under O.C.G.A. § 33-4-6, for penalties and attorney's fees on the grounds that Defendant, in bad faith, "refused to pay [him] within sixty (60) days after [he] made a demand for payment" under the Rider. (Compl. ¶ 23). Plaintiff sought payment of the disability benefits, interest, penalties, and attorney's fees.

---

[6]  From November 8, 2006, through June 9, 2013, Plaintiff received residual disability benefits under the Policy. (DSMF ¶¶ 63-64).

On June 12, 2015, Defendant removed this action from state court. ([1]). On March 2, 2016, Defendant filed its Motion for Summary Judgment [19], which the Court granted on February 15, 2017. (See [27] (the "February 2017 Order")). The Court found that Plaintiff was not eligible for payments under the Rider because he was residually, not totally, disabled.

On March 10, 2017, Plaintiff filed his Motion for Reconsideration, challenging the Court's February 2017 Order. Plaintiff claims the Order erroneously found (1) that "Plaintiff's reading vision in his left eye is now 20/40 or 20/50" and (2) that "Plaintiff could visually evaluate three dimensional products for a maximum of two hours a day." ([29.1] at 2-4). Plaintiff states that "if the [corrected] 'facts' change the court's opinion, then the grant of defendant's motion for summary judgment should be vacated and denied." ([29.1] at 8).

## II. DISCUSSION

### A. Legal Standard

Motions for reconsideration "should be reserved for extraordinary circumstances" and are not to "be filed as a matter of routine practice." LR 7.2(E), NDGa; Adler v. Wallace Computer Servs., Inc., 202 F.R.D. 666, 675 (N.D. Ga. 2001). If a motion for reconsideration is "absolutely necessary," it must be "filed

9

with the clerk of court within twenty-eight (28) days after entry of the order or judgment." LR 7.2(E), NDGa.

Plaintiff here seeks reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure. ([29.1] at 2); see Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 906 n.5 (11th Cir. 1993) ("A motion for reconsideration made after final judgment falls within the ambit of either Rule 59(e) (motion to alter or amend a judgment) or Rule 60(b) (motion for relief from judgment or order)."). "The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007); see Hood v. Perdue, 300 F. App'x 699, 700 (11th Cir. 2008); Jersawitz v. People, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999). An error is "manifest" if it is "clear and obvious." United States v. Battle, 272 F. Supp. 2d 1354, 1358 (N.D. Ga. 2003); see Benton v. Burke, No. 11-cv-493, 2012 WL 1746122, at *1 (N.D. Ala. May 16, 2012) ("A manifest error of law is the wholesale disregard, misapplication, or failure to recognize controlling precedent."). A court's conclusions are not manifestly erroneous if they are "at least arguabl[y]" correct. Battle, 272 F. Supp. 2d at 1358.

"[T]he moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Burger King

10

Corp. v. Ashland Equities, Inc., 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). "[W]hen evaluating a motion to reconsider, a court should proceed cautiously, realizing that in the interests of finality and conservation of scarce judicial resources, reconsideration of a previous order is an extraordinary remedy to be employed sparingly." United States v. Barnes, No. 3:08-cv-966-J, 2012 WL 3194419, at *3 (M.D. Fla. June 5, 2012). Whether to grant a motion for reconsideration is "committed to the sound discretion of the district judge." Townsend v. Gray, 505 Fed. App'x 916, 917 (11th Cir. 2013) (per curiam).

B.    Analysis

Plaintiff claims that the Court's February 2017 Order contains two facts that are incorrect: (1) that "Plaintiff's reading vision in his left eye is now 20/40 or 20/50," and (2) that "Plaintiff could visually evaluate three dimensional products for a maximum of two hours a day." ([29.1] at 2-4). The Court's first conclusion does not constitute a manifest error of fact. Plaintiff, at his deposition, was asked whether he had "lost all vision in the left eye." ([20] at 40). He responded, "I have—I've lost all reading vision. I have about 20—what did he tell me?—I think it's around 20/400 or 20/800. It's—I think reading vision is about 20/40 or 20/50." ([20] at 40). Plaintiff now claims he meant that "*when both eyes are open* his reading vision is about 20/40 or 20/50." ([29.1] at 3 (emphasis added)).

11

As Plaintiff acknowledges, his deposition testimony does not clearly convey the meaning he apparently intended. ([29.1] at 3). Plaintiff, in response to a question about vision in his left eye, stated that his "reading vision is about 20/40 or 20/50." Based on this testimony, the Court did not commit "manifest error" in concluding that "Plaintiff's reading vision in his left eye is now 20/40 or 20/50." (February 2017 Order at 6); see Bedtow Grp. II, LLC v. Ungerleider, 684 F. App'x 839, 843 (11th Cir. 2017) ("A Rule 59(e) motion for reconsideration may be granted based only on newly-discovered evidence or to correct manifest errors of law or fact."); Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc., 763 F.2d 1237, 1239 (11th Cir. 1985) (denying a motion for reconsideration because "any error that may have been committed is not the sort of clear and obvious error which the interests of justice demand that we correct").

The Court's second factual conclusion—that "Plaintiff could visually evaluate three dimensional products for a maximum of two hours a day"—also does not constitute manifest error. Plaintiff claims this conclusion is incorrect because, on some days, Plaintiff is unable to examine items for two hours at a time. ([29.1] at 4). The Court's conclusion is consistent with this factual assertion. The Court found that Plaintiff could "do [three-dimensional] evaluation for a *maximum* of two hours a day." (February 2017 Order at 6 (emphasis added)). Nothing in

this statement suggests that Plaintiff could examine items for two hours *every day*. Plaintiff has not shown that the Court's February 2017 Order contains manifest errors of fact.

Even assuming the Court's two factual conclusions were manifestly erroneous, they do not warrant relief from the February 2017 Order because Defendant still is entitled to summary judgment. The Court's decision to grant Defendant's summary judgment motion was not based on the reading vision in Plaintiff's left eye or on the conclusion that Plaintiff could examine three-dimensional items for two hours every day. The Court awarded summary judgment to Defendant because Plaintiff is residually, not totally, disabled:

> Plaintiff's only eye-related limitation is that he cannot "analyz[e] items for more than short periods of time" because his vision "blur[s] out." This means he is unable to do certain eye-intensive tasks, such as product inspection, for as long as he could before damaging his left eye. It does not, however, prevent him from meaningfully engaging in those tasks, from engaging in other material tasks not dependent on intense focus of the eyes,[7] or from otherwise running his business. . . . Plaintiff is residually disabled only.

(February 2017 Order at 18-19).

---

[7] These tasks include negotiating transactions, traveling for work, weighing the merits of a business proposal, networking (at trade shows, for example), managing his staff, and outsourcing or delegating work to others in the industry.

Plaintiff's business involves buying and selling watches, jewelry and other related items. The undisputed evidence is that Plaintiff continues to engage in his business today and does so substantially. He buys and sells items at trade shows, over the telephone, and over the internet. He actively seeks new business by advertising in two trade magazines. He is the exclusive representative for one watch manufacturer and represents another. He continues to purchase watches at wholesale, and "occasionally help[s] some[one] broker a collection" of used watches. He evaluates and purchases items from estates and jewelry stores. In 2015, he attended seven or eight trade shows, sold approximately 1,500 watches on eBay, and traveled to jewelry stores in North Carolina and Florida where he evaluated and purchased items from both stores. He is able to purchase items in bulk, from stores with which he is familiar, without "physically handl[ing]" the items at issue. ([21] at 44). He continued to work ten or twenty hours per week after his retinal vein occlusion. (DSMF ¶ 57).

Plaintiff's eye condition restricts his ability to perform certain tasks "for as long [or as effectively] as he customarily performed them before [his] injury or sickness." (DSMF ¶ 5). It does not, however, "prevent[] him from engaging in his regular occupation." (DSMF ¶ 5). He continues to operate WFN and engage in his occupation. Plaintiff is not totally disabled, he is not eligible for payments under

14

the Rider, and the Court's February 2017 Order correctly awarded summary judgment to Defendant. Cf. Fountain v. Unum Life Ins. Co. of Am., 677 S.E.2d 334, 337 (Ga. Ct. App. 2009) ("Total disability exists when one is wholly disabled from pursuing the usual and customary duties of his employment on which he must depend for a living. Total disability is the antithesis of partial disability. One is the opposite of the other."); Girardeau v. Guardian Life Ins. Co., 287 S.E.2d 324, 324 (Ga. Ct. App. 1981) ("[T]he insurer is not liable as for a total disability when the accident or disease has merely prevented the insured from doing as much in a day's work as before. Such lessened earning capacity may be a case of partial disability, but not a case of total disability."). Plaintiff has not established "extraordinary circumstances" warranting relief under Rule 59(e), and his Motion for Reconsideration is denied. Adler, 202 F.R.D. at 675.[8]

---

[8] To the extent Plaintiff seeks relief on the basis of cases previously addressed by the Court in its February 2017 Order, Plaintiff has not shown that reconsideration is warranted under Rule 59(e). See Michael Linet, Inc. v. Vill. of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005) ("[A party] cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.").

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration and Motion to Alter/Amend Judgment [29] is **DENIED**.

**SO ORDERED** this 28th day of August, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE